**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| LORETTA T ELLIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **1:16CV1175** |
| | ) | |
| AMERICAN STATES INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Loretta T Elliott's Motion to

Remand [Doc. #13] in which she argues that Defendant American States Insurance

Company's Notice of Removal is untimely under 28 U.S.C. § 1446(b) and that,

because the parties are both citizens of North Carolina, there is no diversity

jurisdiction under 28 U.S.C. § 1332.  For the reasons explained below, the motion

is denied.

I.

On August 9, 2016, Elliott, a citizen of North Carolina, filed this action

against American States Insurance Company ("American States"), a corporation

organized under the laws of Indiana with its principal place of business in

Massachusetts, in Durham County Superior Court alleging unfair and deceptive

trade practices under North Carolina law. (See generally Compl. [Doc. #7]; Notice

of Removal ¶ 4.b. [Doc. #1].)  The suit stems from a January 2013 automobile

accident involving Elliott and another driver in which Elliott sustained injuries.

1

(Compl. ¶¶ 3-7.) After Elliott received payments from State Farm, the other driver's insurer, and from American States, her provider of underinsured motorist ("UIM") coverage, she instituted this action alleging that American States (1) did not act in good faith to settle Elliott's UIM claim, (2) attempted to settle for an amount less than her UIM coverage, and (3) compelled her to institute litigation to recover amounts due under her UIM policy – each act constituting an unfair and deceptive trade practice in violation of North Carolina law. (Id. ¶¶ 10-23.)

II.

The parties agree that Elliott served the Complaint and Summons on North Carolina's Commissioner of Insurance on August 12, 2016, that American States received the Complaint and Summons from the Commissioner of Insurance on August 24, 2016, and that American States removed the action to this Court on September 23, 2016. (See Proof of Acceptance of Service by Gloria H. Glasco, Ex. 2 to Notice of Removal [Doc. #1-2] & Ex. A to Mot. to Remand [Doc. #13-1]; CSC Notice of Service of Process, Ex. 2 to Notice of Removal [Doc. #1-2]; Petition for Removal [Doc. #1]; Br. in Supp. of Pl.'s Mot. to Remand [Doc. #14] at 2; Def.'s Br. in Opp'n [Doc. #17] at 2-3.) The parties disagree as to which date triggered the thirty-day removal period under 28 U.S.C. § 1446(b). Elliott contends that the operative date is August 12 in which case the notice of removal is untimely, while American States argues the operative date is August 24 in which case its notice of removal is timely.

2

28 U.S.C. § 1446(b) directs that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  Citing Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) and Barbour v. International Union, 640 F.3d 599 (4th Cir. 2011), Elliott argues that this provision is straightforward when there is a single defendant, as here. (Br. in Supp. of Pl.'s Mot. to Remand at 3-4.)  American States' "time to remove is triggered by simultaneous service of the summons and complaint", which occurred, according to Elliott, on August 12, 2016. (Id. at 4.)

On the other hand, American States relies primarily on Gordon v. Hartford Fire Insurance Co., 105 F. App'x 476, 480 (4th Cir. 2004) (unpublished), in which the Fourth Circuit held that "[w]hen service is effected on a statutory agent [which the North Carolina Commissioner of Insurance is, according to American States], rather than on an agent appointed by the defendant, the time to remove the action to federal court does not start to run until the defendant actually has received a copy of the complaint." (Def.'s Br. in Opp'n at 3-6.)  Elliott denies that the removal statute permits such an interpretation and argues that, even if it did, the North Carolina Commissioner of Insurance is not American States' statutory agent.

In North Carolina, a foreign insurance company may be licensed to do business when, among other requirements, it "[f]iles with the Commissioner an instrument appointing the Commissioner as the company's agent on whom any

3

legal process under G.S. 58-16-30 may be served." N.C. Gen. Stat. § 58-16-5(10).  According to its Notice of Removal, American States is incorporated in Indiana with its principal place of business in Massachusetts. (Notice of Removal at ¶ 4.b.)  As such, to do business in North Carolina, it filed an instrument appointing the North Carolina Commissioner of Insurance as its agent for service of process, pursuant to statute. (Appointment, Ex. 1 to Reply Br. in Supp. of Pl.'s Mot. to Remand [Doc. 19-1].)  To determine whether the Commissioner of Insurance is American States' statutory agent, the Court looks to Gordon and other instructive cases.

Just as in North Carolina, the Maryland law applicable in Gordon requires foreign insurance companies who offer insurance in Maryland "to have the Maryland Insurance Administration . . . serve as their statutory agent for the delivery of complaints." 105 F. App'x at 480 (citing Md. Code Ann., Ins. § 4-107 ("[E]ach insurer applying for a certificate of authority must appoint the Commissioner as attorney for service of process issued against the insurer in the State.")) (emphasis added).  The Fourth Circuit's characterization of the Maryland Commissioner of Insurance as the defendant insurance company's "statutory agent", along with the similarities between the Maryland and North Carolina statutes requiring appointment of the Commissioners of Insurance as agents for service of process on foreign insurers, support a finding that the North Carolina Commissioner of Insurance is American States' statutory agent. See also, e.g., Tucci v. Hartford Fin. Servs. Grp., Inc., 600 F. Supp. 2d 630 (D.N.J. 2009) (citing

Case 1:16-cv-01175-NCT-JEP   Document 26   Filed 03/17/17   Page 4 of 11

N.J. Stat. Ann. § 17:32-2(c) which requires a foreign insurance company seeking to do business in New Jersey to permit legal process to be served on the commissioner and characterizing the New Jersey Commissioner of Banking and Insurance as the defendant's statutory agent); Skidaway Assocs., Ltd. v. Glens Falls Ins. Co., 738 F. Supp. 980 (D.S.C. 1990) (noting that the plaintiff served the South Carolina Department of Insurance "in accordance with South Carolina law", distinguishing "between agents designated by statute and agents designated and selected by a party to receive process", and characterizing the South Carolina Commissioner of Insurance as the defendant's statutory agent).

Having concluded that the North Carolina Commissioner of Insurance is American States' statutory agent, the next step is to determine if service on a statutory agent begins the thirty-day time period for removal. The only Fourth Circuit opinion to address the question is Gordon in which the court found that service on the statutory agent did not trigger the time period for removal. 105 F. App'x at 481. Although it is an unpublished opinion, it is in line with "the overwhelming majority of district courts to consider the question". Id. at 480-81 (citing Lilly v. CSX Transp., Inc., 186 F. Supp. 2d 672 (S.D.W. Va. 2002), Hibernia Cmty. Dev. Corp. v. U.S.E. Cmty. Servs. Grp., Inc., 166 F. Supp. 2d 511 (E.D. La. 2001), Auguste v. Nationwide Mut. Ins. Co., 90 F. Supp. 2d 231 (E.D.N.Y. 2000), Monterey Mushrooms, Inc. v. Hall, 14 F. Sup. 2d 988 (S.D. Tex. 1998), Skidaway Assocs., Ltd., 738 F. Supp. 980); see also Tucci, 600 F. Supp. 2d at 632-33 ("Though there is no published circuit court opinion on the subject,

5

the vast majority of courts to consider this question have held that the thirty-day period for removal does not commence with service on a statutory agent, but instead when the defendant receives the summons and complaint."); 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3731 (4th ed. Oct. 2016 update) ("[I]t now appears to be settled law that the time for removal begins to run only when the defendant or someone who is the defendant's agent-in-fact receives the notice via service, as prescribed in the Murphy Brothers case.")

The Tucci court addressed an argument similar to the one that Elliott advances here – that such a finding "is in conflict with" Murphy Brothers, Inc. In Murphy Brothers, Inc., the issue before the Court was whether the period for removal begins when the defendant receives a faxed courtesy copy of the complaint before service of official process. 526 U.S. at 347. As the Tucci court noted, "The Supreme Court was not asked, and did not address, the meaning of the requirement that there be 'receipt by the defendant,' let alone whether formal service on a statutory agent necessarily must start the removal period." 600 F. Supp. 2d at 635. Nevertheless, the Court's recognition that Congress intended section 1446(b) to afford defendants "adequate time" after receipt of the initial pleading provides, as the Tucci court concluded, support for the "well-established rule that the removal period begins not with service on a statutory agent, but with receipt by defendants or their true agent". Id. (citing Murphy Bros., Inc., 526 U.S. at 351-54).

Elliott also argues that such a finding conflicts with a statement that the Fourth Circuit made in <u>Barbour</u>, a case involving the timeliness of removal when there are multiple defendants. The court stated, "If a case involves a single defendant, the operation of § 1446(b) is straightforward. The defendant must file the notice of removal within thirty days of service." 604 F.3d at 605. As with <u>Murphy Brothers, Inc.</u>, the issue of service on statutory agents was not before the <u>Barbour</u> court, and nothing in the court's aforementioned statement is undermined by the conclusion that the time for removal is triggered when the defendant or its agent-in-fact receives the summons and complaint.

The conclusion that service on a statutory agent does not begin the period for removal also finds support in the comparison of a statutory agent with a registered agent or agent-in-fact. "[S]tatutory agents are government officials who are designated to receive service of process or other documents under state law. These agents are not agents in fact, but . . . are merely mediums for the transmission of important papers." <u>Val Energy, Inc. v. Ring Energy, Inc.</u>, No. 14-1327-RDR, 2014 WL 5510976, *2 (D. Kan. Oct. 31, 2014) (distinguishing between resident agents appointed by foreign corporations and "true statutory agents"); <u>see also</u> 14C Wright & Miller § 3731 ("Realistically speaking, of course, statutory agents are not true agents but merely are a medium for transmitting the relevant papers."). "Statutory agents, unlike agents in fact, have both limited purpose and limited power." <u>Tucci</u>, 600 F. Supp. 2d at 633 (noting that statutory agents "are not true agents but are merely a medium for transmitting the relevant

papers"). These basic concepts are evident here where Elliott served the Complaint and Summons on the North Carolina Commissioner of Insurance who then forwarded the documents to American States. (See Notice of Removal, Ex. 2.) Only upon receipt on August 24, 2016 of the Complaint and Summons as forwarded by the Commissioner could American States have known whether or not the matter could be removed to federal court, which it did within thirty days on September 23, 2016.

III.

Elliott next argues that the parties are not completely diverse and, thus, the Court lacks jurisdiction under 28 U.S.C. § 1332. According to Elliott, because this is a direct action against American States, pursuant to 28 U.S.C. § 1332(c)(1), American States takes on the citizenship of its insured, Elliott – that of North Carolina. (Br. in Supp. of Pl.'s Mot. to Remand at 4-5.) On the other hand, American States asserts that this is not a direct action and, therefore, that its citizenship is determined solely by its states of incorporation and principal place of business – neither of which is North Carolina. (Def.'s Br. in Opp'n at 6-9; Notice of Removal at 4.)

The determination of corporate citizenship pursuant to 28 U.S.C. § 1332(c)(1) often is straightforward – for purposes of 28 U.S.C. §§ 1332 and 1441, a corporation is deemed to be a citizen of every state in which it is incorporated and of every state in which it has its principal place of business. However, there is an exception to that rule. "[I]n any direct action against the

8

insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of" every state in which it is incorporated, every state in which it has its principal place of business, and every state of which the insured is a citizen. 28 U.S.C. § 1332(c)(1)(A)-(C).

"[A] 'direct action' is a tort claim in which the insurer essentially stands in the shoes of its legally responsible insured". Rosa v. Allstate Ins. Co., 981 F.2d 669, 677 (2d Cir. 1992). It is "an action by an injured party against an insurer to recover for damages caused not by the insurer but by its insured, who is not joined in the action." Eltsefon v. State Farm Mut. Auto. Ins. Co., 826 F. Supp. 2d 922, 925 (E.D. Va. 2011).

"This is in contrast to cases in which the injured party 'seeks to hold the insurer responsible for breaching the terms of its insurance policy or for its independent tortious acts.'" Corn v. Precision Contracting, Inc., 226 F. Supp. 2d 780, 783 (W.D.N.C. 2002) (quoting Rosa, 981 F.2d at 677). In other words, "a direct action would not include an action by the insured against the insurer based on its independent wrongs." Id. at 782 (citing Searles v. Cincinnati Ins. Co., 998 F.2d 728, 729-730 (9th Cir. 1993)). Unless "'the liability sought to be imposed could be imposed against the insured, the action is not a direct action.'" Id. (quoting Searles, 998 F.2d at 729). Compare Corn, 226 F. Supp. 2d at 783 (finding a direct action where the plaintiffs sued the alleged tortfeasor and its liability insurer to determine the limits of the policy such that the insurer stood in

9

the shoes of its insured) with U.S. Home Corp. v. Nationwide Mut. Fire Ins. Co., No. 1:15-cv-1464-GBL-JFA, 2016 WL 958348, *1, *5 (E.D. Va. Mar. 8, 2016) (finding no direct action where the plaintiff sought a declaratory judgment against its own insurer) and Porter v. Buck, No. 7:14CV00176, 2014 WL 3563415, *4 (W.D. Va. July 18, 2014) (finding no direct action where the plaintiff sought a declaratory judgment against her own insurer) and Eltsefon, 826 F. Supp. 2d at 926 (finding no direct action where the plaintiffs sued the alleged tortfeasor's insurer for breach of oral agreement, fraud, and unjust enrichment) and Cunningham v. Twin City Fire Ins. Co., 669 F. Supp. 2d 624, 628-29 (D. Md. 2009) (finding no direct action where the plaintiff sued the issuer of his former employer's workers compensation and liability insurance policies for intentional misrepresentation and tortious interference) and Boyd v. Baird, No. 5:07CV25-V, 2008 WL 1724011, *3-5 (W.D.N.C. Apr. 10, 2008) (finding no direct action where the plaintiff sued his own insurer for breach of contract and unfair and deceptive trade practices).

Here, Elliott has not sued the alleged tortfeasor's insurer to recover for damages that she sustained as a result of the automobile accident. Instead, she has sued her own insurer, American States, for unfair and deceptive trade practices, a suit that is clearly not a direct action under section 1332(c)(1).

Elliott challenges this conclusion by arguing, among other things, that cases distinguishing suits like hers from direct actions by analyzing legislative history violate principles of statutory construction. (Br. in Supp. of Pl.'s Mot. to Remand at

6-13.)  Although she argues that the meaning of the phrase "in any direct action against the insurer of a policy or contract of liability insurance" is clear and unambiguous (id. at 11), the Boyd court recognized that "the statute's purported plain meaning is not 'plain' in application . . . [and that] it is entirely appropriate to consider what Congress intended", 2008 WL 1724011, at *3.  It is not the only court to make this conclusion or to have found support for the definition of a direct action in the provision's legislative history. See U.S. Home Corp., 2016 WL 958348, at *4 (discussing the legislative history of the direct action provision); Eltsefon, 826 F. Supp. 2d at 925 (same); Cunningham, 669 F. Supp. 2d at 627 (same).  This Court finds these cases persuasive.

IV.

In sum, American States timely removed this action by filing its notice of removal within thirty days of its receipt on August 24, 2016 of the Complaint and Summons.  Furthermore, this Court has jurisdiction over the matter because the parties are completely diverse and there are no other challenges to jurisdiction.

V.

For the reasons stated herein, IT IS HEREBY ORDERED that Plaintiff Loretta Elliott's Motion to Remand [Doc. #13] is DENIED.

This the 17th day of March, 2017.


/s/ N. Carlton Tilley, Jr.
Senior United States District Judge
