**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

LORETTA T ELLIOTT,

        Plaintiff,

    v.

AMERICAN STATES INSURANCE
COMPANY,

        Defendant.

)
)
)
)
)
)
)
)
)

**1:16CV1175**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [Doc. #11] by

Defendant American States Insurance Company ("American States") in which it

argues pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure that

Plaintiff Loretta T. Elliott's Complaint fails to state a claim upon which relief can be

granted.  For the reasons explained below, the motion is granted.

I.

In evaluating a Rule 12(b)(6) motion, well-pled facts are accepted as true

and construed in the light most favorable to Elliott. Nemet Chevrolet, Ltd. v.

Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).  Elliott suffered

serious, painful, and permanent bodily injuries as a result of a January 2013

vehicle accident in which a truck driven by Michael F. Jones collided with Elliott's

vehicle. (Compl. ¶¶ 3, 4, 6 [Doc. #7].)  Jones had primary liability coverage up to

$30,000.00 with State Farm. (Id. ¶ 8.)  Elliott had underinsured motorist ("UIM")

coverage up to $100,000.00 with American States. (Id.; id. Ex. A (American

States Policy). )  On July 8, 2014, Elliott submitted a settlement demand package to State Farm for $234,847.00 after which it paid Elliott the policy limit of $30,000.00. (Id. ¶¶ 9-11.)

On July 25, 2014, Elliott submitted the same settlement package to American States and demanded that it pay $70,000.00 in UIM coverage. (Id. ¶ 13.)  In response, on August 28, 2014, American States refused to pay any amount of UIM coverage. (Id. ¶ 14.)  Elliott then notified American States that, "As a result we feel compelled to institute litigation to recover amounts due under" her UIM coverage. (Id.)  When American States did not respond, Elliott instituted an action on October 8, 2014 in Durham County Superior Court which she refers to as "the 'Elliott v. Jones lawsuit'". (Id. ¶ 15.)  American States defended the suit as an unnamed party. (Id.)

After the matter was referred to arbitration by Order of the Superior Court, an arbitration hearing was held and Elliott was awarded $90,000.00 in actual damages plus prejudgment interest and costs as provided by law. (Id. ¶ 16.)  A judgment was later entered in favor of Elliott against Jones in the amount of $60,000.00, taking into account State Farm's $30,000.00 payment on Jones' behalf, with interests and costs. (Id. ¶ 17; id. Ex. C (Mar. 1, 2016 Judgment).)  Thereafter, Elliott recovered that award from American States as her UIM coverage. (See id. ¶¶ 18, 21.B.)  Nevertheless, she has subsequently sued American States for unfair and deceptive trade practices.

Elliott alleges that American States has violated North Carolina General Statute § 58-63-15(11), and each such violation constitutes an unfair and deceptive trade practice under North Carolina General Statutes Chapter 75. (Id. ¶¶ 21, 23.) Specifically, she alleges that American States violated North Carolina General Statute § 58-63-15(11)f when it "did not attempt in good faith to effectuate a prompt, fair and equitable settlement of [her] claims in which liability had become reasonably clear". (Id. ¶ 21.A.) American States allegedly violated North Carolina General Statute § 58-63-15(11)g when it "compelled [her] to institute litigation to recover amounts due under the UIM provisions of her . . . insurance policy" by refusing to offer any amount of UIM payment until its token offers preceding arbitration that were "substantially less than the amount of UIM coverage ultimately recovered". (Id. ¶ 21.B.) Finally, Elliott alleges that American States violated North Carolina General Statute § 58-63-15(11)h when it "attempted to settle [her] claim for an amount of UIM coverage less than the amount . . . a reasonable person would have believed Elliott was entitled to recover". (Id. ¶ 21.C.) In response, American States argues that "Elliott has failed to plausibly state a[n Unfair and Deceptive Trade Practices] claim against [it] where [it] complied with the provisions of the Subject Policy by resolving [Elliott's] UIM claim through arbitration and paid [her] the Arbitration Award once entered". (Br. in Supp. of Mot. to Dismiss ("Br. in Supp.") at 3 [Doc. #12].)

II.

3

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in her favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557.

III.

The elements of a claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), North Carolina General Statute § 75-1.1, are (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) which

4

proximately caused injury to the plaintiff. <u>Gray v. N.C. Ins. Underwriting Ass'n</u>, 529 S.E.2d 676, 681 (N.C. 2000) (citing N.C. Gen. Stat. § 75-1.1(a)). "The determination of whether an act or practice is an unfair or deceptive practice that violates [the UDTPA] is a question of law for the court." <u>Id.</u>

Section 58-63-15(11) of the North Carolina General Statutes lists "Unfair Claim Settlement Practices" in the insurance industry that are actionable by the Commissioner of Insurance if they are committed or performed "with such frequency as to indicate a general business practice". In addition, "the types of conduct listed in [this section] can be used to support a private cause of action pursuant to the UDTPA." <u>Federated Mut. Ins. Co. v. Williams Trull Co., Inc.</u>, 838 F. Supp. 2d 370, 421 (M.D.N.C. 2011). A violation of § 58-63-15(11) "constitutes a violation of N.C.G.S. § 75-1.1, as a matter of law, without the necessity of an additional showing of frequency indicating a 'general business practice'". <u>Gray</u>, 529 S.E.2d at 683 (finding that a violation of subsection (f) of § 58-63-15(11) is an unfair and deceptive practice because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers"); <u>see also</u> <u>Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co.</u>, 563 S.E.2d 269, 279 (N.C. Ct. App. 2002) (extending <u>Gray</u> to apply to all conduct described in § 58-63-15(11)).

The parties do not dispute that the unfair claim settlement practices provisions of North Carolina law apply to underinsured motorist insurance. However, Elliott fails to acknowledge that her underinsured motorist coverage

differs from primary liability insurance in that it is "derivative and conditional." Brown v. Lumbermens Mut. Cas. Co., 204 S.E.2d 829, 834 (N.C. 1974) (finding, under the terms of the applicable policy, unless the plaintiff is legally entitled to recover from the uninsured motorist, he is precluded from recovering against the defendant insurer). Under the terms of Elliott's policy, American States agreed to "pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured and caused by an accident." (Am. States Policy Pt. C2, "INSURING AGREEMENT", at 9 (emphasis added).) The amount due under an underinsured motorist policy "is conclusively determined in litigation against the uninsured motorist". Chew v. Progressive Universal Ins. Co., No. 5:09-CV-351-FL, 2010 WL 4338352, *10 (E.D.N.C. Oct. 25, 2010) (involving uninsured motorist coverage with the same policy language as Elliott's and citing Brown, 204 S.E.2d at 834 and McLaughlin v. Martin, 374 S.E.2d 455, 456 (N.C. Ct. App. 1988)); see id. at *7 (analyzing a breach of contract claim and explaining that, although an investigation established the uninsured motorist's fault, the amount of damages was contested and, because those damages were "the measure of the uninsured motorist's liability, defendant was not liable under the contract to pay the claim until the extent of the uninsured motorist's liability for plaintiff's alleged [injuries] was established").

As in the instant case, in Bendrick v. State Farm Mutual Automobile Insurance Co., No. 3:11-CV-573-RJC-DCK, 2012 WL 1247158, *1 (W.D.N.C.),

6

adopted 2012 WL 1247178 (Apr. 13, 2012), the "crux" of the plaintiff's complaint was that she was compelled to arbitrate before the defendant insurer would tender the limits of its underinsured motorist coverage. In evaluating the insurer's motion to dismiss, the court found persuasive the insurer's argument that "it was not required to make any offers before or after the arbitration, since it had no duty to pay under its policy until such amounts were proven recoverable against [the tortfeasor]." Id. at *4. Once those amounts were proven, the insurer paid the plaintiff. Id. at *5. Ultimately, none of the allegations supported a plausible claim of unfair or deceptive trade practices. Id.

In Chew, while evaluating motions for summary judgment, the court determined that the plaintiff's claim "boil[ed] down to an argument" that her insurer compelled her to institute litigation by offering substantially less than her ultimate recovery, an argument the court described as "facially appealing, but ultimately unconvincing." 2010 WL 4338352, at *10. The plaintiff did institute arbitration to obtain the amount due on the claim, and the insurer's settlement offers were substantially less than her arbitration award. Id. However, "it was not defendant who compelled plaintiff to institute litigation." Id. "Rather, it was North Carolina law, in which the amount 'due under [an uninsured motorist] policy' is conclusively determined in litigation against the uninsured motorist, that compelled this result." Id. (citing Brown, 204 S.E.2d at 834, McLaughlin, 374 S.E.2d at 456) (alteration in original); see also Lemons v. Pa. Nat'l Mut. Cas. Ins. Co., No.

1:11CV257, 2011 WL 2565617, *4 (M.D.N.C. June 28, 2011)[1] (explaining that "[t]he fact that the arbitrator ultimately sided with Lemons and awarded him more than the amount tendered by Penn National does not ipso facto mean that Penn National engaged in unfair and deceptive trade practices or unfair claim settlement practices" and noting that "[t]he value of an insured's claim under an insurance policy is not an exact science").

On the other hand, the plaintiff in Guessford v. Pennsylvania Mutual Casualty Insurance Co., 918 F. Supp. 2d 453, 465-66 (M.D.N.C. 2013), alleged, among other things, that the defendant insurer failed to investigate his claim properly and misrepresented pertinent facts or insurance policy provisions. The court found that these allegations of aggravated conduct and bad faith delay stated a plausible claim of unfair or deceptive trade practices. Id. at 466.

Here, Elliott alleges that American States "did not attempt in good faith to effectuate a prompt, fair and equitable settlement of [her] claims in which liability had become reasonably clear". (Compl. ¶ 21.A.) She alleges facts that she contends "presented a case of clear liability on the part of Jones", as well as alleging that State Farm paid its policy limit as Jones' insurer. (Id. ¶¶ 5, 6, 10, 11.) She alleges that she was compelled to institute litigation to recover amounts due

_____

[1] At the time of its execution on June 28, 2011, the Lemons decision was a Memorandum Opinion and Recommendation by Judge Dixon. However, per order of the then-chief judge on July 1, 2011 and order of Judge Dixon on July 12, 2011, the Memorandum Opinion and Recommendation became the Order of the court. (See Orders [Docs. #11, 13, 15 in Case No. 1:11CV257].)

under her UIM coverage when American States refused to offer any amount of UIM payment until its token offers after litigation was instituted that were substantially less than the arbitration award. (Id. ¶ 21.B.)  In so doing, American States' settlement offers were for an amount less than what a reasonable person would have believed she was entitled to recover from her UIM coverage. (Id. ¶ 21.C.)

Even when the facts underlying these allegations are assumed to be true, the terms of Elliott's insurance policy and the nature of UIM coverage support the conclusion that American States did not plausibly engage in unfair or deceptive trade practices.  Elliott has not alleged the type of aggravated conduct and bad faith that sustained the plaintiff's complaint in Guessford.  Instead, her allegations are not that different from those in Bendrick, Chew, and Lemons, where the courts either found that the plaintiff failed to state a claim for unfair and deceptive trade practices or that the undisputed evidence did not support such a claim.  Just as the defendant persuasively argued to the Bendrick court, American States was not required to make any offers before or after arbitration.  Under the terms of Elliott's policy, American States' obligation to compensate her for Jones' actions did not arise until Elliott was "legally entitled to recover" from Jones, or, as the Bendrick plaintiff stated, "until such amounts were proven recoverable against" Jones.  Furthermore, according to the policy, if American States and Elliott disagreed as to whether she was legally entitled to recover compensatory damages from Jones or as to the amount of such compensatory damage, she "may demand to settle these

disputed issues by arbitration." (Am. States Policy Pt. C2, "ARBITRATION", at 12.)
Simply because the arbitration amount was substantially higher than the token
offers that American States made to settle Elliott v. Jones does not mean that
American States engaged in unfair or deceptive trade practices or unfair claim
settlement practices. Not only is determining the value of an insured's claim under
an insurance policy not an exact science, but, here, there was no obligation to
offer any payment until it was determined that Elliott was legally entitled to
recover from Jones. When the judgment was entered against Jones for $60,000
plus interest and costs, American States' obligation to pay Elliott arose, an
obligation which it apparently honored. In other words, pursuant to the terms of
her insurance policy, Elliott instituted an action against Jones, the result of which
was an arbitration award that American States paid. Consequently, Elliott has not
plausibly alleged the first element of a claim under the UDTPA – an unfair or
deceptive act or practice.

American States also argues that Elliott has failed to allege damages
proximately caused by its alleged unfair or deceptive trade practices. (Br. in Supp.
at 14-15.) The arbitration award and subsequent judgment included, not only
compensatory damages, but prejudgment interest and costs, all of which American
States has apparently paid to Elliott. (Compl. ¶¶ 16-18, 21.B. (noting the "UIM
coverage ultimately recovered by Plaintiff Elliott as the result of the Judgment
entered in the Elliott v. Jones lawsuit").) As such, Elliott's threadbare allegation
that "American States' said unfair and deceptive trade practices have damaged

10

[her] in an amount in excess of $25,000" finds no factual support in her

Complaint. See Lemons, 2011 WL 2565617 at *4 n.4 (explaining that the plaintiff

also failed to allege damages when she agreed to arbitration pursuant to her

insurance contract, initiated arbitration, and was awarded and was paid

compensation as a result of arbitration). She, therefore, has also failed to allege

plausibly the third element of a claim under the UDTPA – damages proximately

caused to the plaintiff.

IV.

For the reasons stated herein, IT IS HEREBY ORDERED that Defendant

American States Insurance Company's Motion to Dismiss [Doc. #11] is GRANTED

and that this case is DISMISSED.

This the 22nd day of March, 2017.


/s/ N. Carlton Tilley, Jr.
Senior United States District Judge